IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSEPH L. SAVAGE, | CASE NO. 5:25-cv-762 |
| Plaintiff, | |
| | MAGISTRATE JUDGE |
| vs. | JAMES E. GRIMES JR. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

Plaintiff Joseph L. Savage filed a complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying his applications for supplemental security income and disability insurance benefits. Doc. 1. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to my jurisdiction in this case. Doc. 4. Following review, and for the reasons stated below, I affirm the Commissioner's decision.

**Procedural Background**

In November 2022, Savage filed applications for both supplemental security income and disability insurance benefits, alleging a disability onset date of August 14, 2022.[1] Tr. 157–66. In pertinent part, Savage alleged that he was disabled and unable to work due to the following impairments: warm blooded hemolytic anemia, peripheral arterial disease, Type-2 diabetes, and hypertension. Tr. 194.

In June 2023, Savage requested a hearing. Tr. 104. Administrative Law Judge ("ALJ") Mary Lohr held a telephone hearing in February 2024. Tr. 31. Savage appeared, testified, and was represented by counsel at the February 2024 hearing. Tr. 34. Qualified vocational expert Lynn Smith also testified. *Id*. In April 2024, the ALJ issued a written decision, which found that Savage was not entitled to benefits. Tr. 14–30.

In April 2024, Savage appealed the ALJ's decision to the Appeals Counsel. Tr. 155. In February 2025, the Appeals Counsel denied Savage's appeal, making the ALJ's April 2024 decision the final decision of the Commissioner. Tr. 1; *see* 20 C.F.R. § 404.981.

Savage timely filed this action in April 2025. Doc. 1. In his opening brief, Savage raises four issues:

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

1.    The ALJ erred at Step Three of the Sequential Evaluation when she failed to find that Plaintiff satisfied the criteria of Listing 4.12.

2.    The ALJ erred when she failed to support her conclusions or discuss supportability and consistency when she evaluated the opinions of the treating sources.

3.    The ALJ erroneously failed to comply with Social Security Ruling 16-3p when evaluating the totality of Plaintiff's symptoms.

4.    The ALJ's finding that Plaintiff did not require the use of a cane for both ambulation and standing was not supported by substantial evidence.

Doc. 8, at 1.

**Evidence**

The parties do not dispute the ALJ's description of the medical record, so the ALJ's summary of the evidence is incorporated as follows:

The claimant's primary health concern is peripheral arterial disease in his legs. The claimant was hospitalized from August 10 through August 17, 2021, after presenting with pain and discoloration in the right great toe (1F1). Diagnostic studies on intake showed near complete occlusion of the right external iliac artery, and severe stenosis of the right SFA and popliteal artery with minimal tibial runoff (1F3). Due to the shown severity of occlusion in the right lower extremity, the claimant had stenting placed therein on August 16, 2021 (1F4). Upon discharge, the claimant was started on a medicinal regime of Plavix and warfarin (2F19).

Generally, the record does not reflect an episode of peripheral arterial disease symptoms as severe as those that led to this hospitalization in August 2021.

3

Diagnostic studies dated December 19, 2022 showed mild arterial occlusive disease in the right lower extremity, and moderate occlusive disease in the left (9F67). A few months later on February 16, 2023, diagnostic studies demonstrated severe atherosclerotic disease in the left external iliac artery, and seventy five percent stenosis in the distal left external iliac artery (9F48-9). These findings led to stenting placed in the left lower extremity (9F48-9).

Since this stent placement in the left lower extremity, diagnostic imaging of the lower extremities have consistently been negative for findings of occlusive arterial disease. Imaging dated February 20, 2023, June 1, 2023, and December 5, 2023 all showed no evidence of occlusive arterial disease in the bilateral lower extremities (6F5, 9F6, 9F32). These studies indicate that the stent placements in both lower extremities were and remain effective at preventing further acute exacerbations of leg pain, swelling, discoloration, and or sensation loss.

The claimant's testimony of needing to elevate his legs each day is not consistent with the diagnostic findings showing no lower extremity occlusive disease since February 16, 2023. That claim as it pertains to the right lower extremity in particular is inconsistent with the record dating back to discharge from the hospital on August 17, 2021 because the record shows no recurrent, significant occlusive disease in the right lower extremity since stent placement on August 16, 2021 (9F6, 32, 67, 6F5). Clinical examinations subsequent to the stent placement in the respective legs have generally not shown any recurrent, significant edema in either lower extremity (e.g., 9F444).

The claimant's ability to engage in weight bearing activity is further complicated by other severe impairments however. Laboratory results have consistently demonstrated findings of anemia (e.g., 6F7). Red and white blood cell counts, along with

4

hemoglobin, and hematocrit have all been low on a consistent basis since the alleged onset date (e.g., 9F4, 8). However, these measures have not been markedly abnormal, often falling just below normal levels (9F4, 8). Thus, I find the claimant's allegations of anemia related pain and fatigue to be only partially consistent with the record. I note as well that the treatment the claimant has received for this condition has been conservative in nature.

An MRI of the lumbar spine dated September 29, 2023 showed grade 1 anterolisthesis of L4 on L5 with mild to moderate degenerative changes at L3-4, L4-5, and L5-S1 (9F24). The record does not reflect much follow up concerning treatment for lower back pain however. However, any lower back pain is likely made worse by the presence of obesity, evidenced by a body mass index [BMI] of between thirty and thirty five (e.g., 2F19). While the record does not contain specific signs of complication due to obesity, that impairment plus lower back pain do reasonably relate to his allegations of fatigue and muscle weakness after exertion.

The record also reflects diagnoses for other impairments, including hypertension, hyperlipidemia, and diabetes mellitus. I have considered hypertension and hyperlipidemia as severe in the context of a record that shows arterial occlusion at various points, in the lower extremities. These impairments are further cardiovascular concerns, and likely have played some role in the development of said arterial disease. That said, the record contains little to no objective evidence detailing how hypertension and or hyperlipidemia significantly affect the claimant's ability to work. I have generally considered them as severe as they related to poor cardiovascular functioning. In terms of diabetes, treatment records do show the claimant's blood glucose levels remain high, despite his taking metformin (6F5, 2F19). Much of the reports of sensation loss and weakness in the lower extremities due to diabetes overlaps with the complaints of arterial disease symptoms. I have

considered such symptoms, but note the record does
not show the claimant to exhibit signs of acute
strength loss in the lower extremities despite all of
his severe impairments.

Tr. 21–22.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status
    requirements of the Social Security Act
    through December 31, 2027.

2.  The claimant has not engaged in a substantial
    gainful activity since August 14, 2022, the
    alleged onset date (20 CFR 404.1571 *et seq.*,
    and 416.971 *et seq.*).

3.  The claimant has the following severe
    impairments: diabetes, anemia,
    hypertension, peripheral arterial disease,
    obesity, hyperlipidemia, degenerative disc
    disease of the lumbar spine (20 CFR
    404.1520(c) and 416.950(c)).

4.  The claimant does not have an impairment or
    combination of impairments that meets or
    medically equals the severity of one of the
    listed impairments in 20 CFR Part 404,
    Subpart P, Appendix 1 (20 CFR 404.1520(d),
    404.1525, 404.1526, 416.920(d), 416.925 and
    416.926).

5.  After careful consideration of the entire
    record, I find that the claimant has the
    residual functional capacity[2] to perform

---

[2]     An RFC is an "assessment of" a claimant's ability to work, taking his or
her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235,

sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with the following additional limitations. The claimant can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant cannot work at unprotected heights or near moving, mechanical parts. The claimant requires a cane for ambulation.

6.  The claimant is unable to perform any past relevant work (20 CFR 1565 and 416.965).

7.  The claimant was born on March 5, 1977 and was 45 years old, which is defined as a younger individual age 45–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy

---

239 (6th Circ. 2002). Essentially, it is the Social Security Administration's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

that the claimant can perform (20 CFR
404.1569, 404.1569a, 416.969, and 416.969a).

11.    The claimant has not been under a disability,
as defined in the Social Security Act, from
August 14, 2022, through the date of this
decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 19–26.

### Standard for Disability

Eligibility for social security benefit payments depends on the existence
of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the
"inability to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to last for a continuous
period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C.
§ 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a
disability determination:

1.    Is the claimant engaged in substantial gainful
activity? If so, the claimant is not disabled.

2.    Does the claimant have a medically
determinable impairment, or a combination of
impairments, that is "severe"? If not, the
claimant is not disabled.

3.    Does the claimant's impairment meet or equal
one of the listed impairments and meet the
duration requirement? If so, the claimant is
disabled. If not, the ALJ proceeds to the next
step.

8

4.    What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.    Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id.* "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of Review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*

*v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. at 103 (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

> 1. *The ALJ did not err when she found that Savage's impairments failed to meet or equal Listing 4.12.*

Savage begins by arguing that the ALJ erred at Step Three when she "failed to note that the record supported the fact that [Savage] satisfied the criteria of Listing 4.12." Doc. 8, at 8.

At Step Three of the disability evaluation process, a claimant will be found disabled if his impairments meet or equal one of the listings in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii).[3] The claimant bears the burden of establishing that any condition meets or equals a listing. *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 727–28 (6th Cir. 2004) (citing *Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987)). A claimant "must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Id.* at 728 (citing *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)). "Each listing specifies the objective medical and other findings needed to satisfy the criteria of that listing" and a claimant "must satisfy all the criteria to 'meet' the listing." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). "[A] claimant is also disabled if her impairment is the *medical equivalent* of a listing[.]" *Id.* There is no heightened articulation standard at step three. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006).

Here, Savage argues that the ALJ erred at Step Three when she found that his impairments did not meet or medically equal Listing 4.12. Doc. 8, at

---

[3] The "listings" are found at 20 C.F.R Part 404, Subpart P, App. 1. They are a catalog of disabling impairments organized by "body systems." Generally, each body system section has an Introduction, which contains information relevant to that system, and a Category of Impairments, which contains each numbered listing. Each listing describes the objective medical and other findings needed to satisfy the criteria of that listing. *Id.*; 20 C.F.R. § 404.1525.

7. This means that to succeed with this claim Savage must show his impairments met or medically equaled the requirements of Listing 4.12 during the relevant period of alleged disability. *See Thacker*, 93 F. App'x at 728. To meet or equal Listing 4.12, concerning peripheral arterial disease, Savage must show that he has intermittent claudication and one of the following conditions: (A) a resting ankle or brachial systolic blood pressure ratio of less than .50; (B) a decrease in systolic blood pressure at his ankle on exercise of at least 50 percent of pre-exercise level and that takes at least 10 minutes to return to pre-exercise level; (C) a resting toe systolic blood pressure of less than 30 mm Hg; or (D) a resting toe or brachial systolic blood pressure ratio of less than .40. *See* 20 C.F.R Part 404, Subpart P, Appendix 1, Subsection 4.12.

Savage claims that the "medical evidence established that [he] had intermittent claudication (Tr. 298, 675, 920, 1000) along with a right lower extremity brachial index of 0.45 (Tr. 341)." *Id*. at 7–8. Savage thus concludes that the ALJ's conclusion that "the stents placed in both lower extremities remained effective at preventing acute exacerbations" was incorrect because it was "contrary to the medical evidence which reported that [he] had lifestyle limiting claudication of the left leg in February 2023." Doc. 8, at 8 (citing Tr. 21 (the ALJ's statement) and Tr. 1000 (the medical record)). Savage's argument, however, conflates the requirement of intermittent claudication, which he experienced, with the brachial systolic blood pressure ratio measurement of record.

12

While the record Savage cites states "patient with lifestyle limiting claudication of left leg," Tr. 1000, it does not show that he had a lower extremity brachial systolic blood pressure ratio of less than .50 in his leg during the alleged disability period. As the Commissioner points out, the sole citation that Savage provides in relation to his brachial systolic blood pressure ratio is from August 2021. *See* Doc. 10, at 5 (citing Savage's brief, Doc. 8, at 8, which included the brachial systolic blood pressure ratio provided at Tr. 341). Savage's disability onset date, however, was August 2022—approximately one year later. *See* Tr. 157. The ratio Savage cites is thus from outside of the relevant time period for the disability applications at issue.[4] Savage offers no explanation for how this time discrepancy affects the ALJ's evaluation and he does not offer a convincing response to the Commissioner's well-supported position that the August 2021 ratio is irrelevant to the Listing analysis since it was created outside of the disability period. *See* Doc. 10, at 5–6 (identifying

---

[4]     Savage filed applications under Titles II and XVI of the Social Security Act for disability insurance benefits under Title II and supplemental security income under Title XVI. Tr. 157–66. Under Title II, an eligible claimant must establish disability on or before the date last insured. *See* 20 C.F.R. §§ 404.101, 404.130–31. Savage alleges a disability onset date of August 14, 2022. Tr. 160. His date last insured is December 31, 2026. Tr. 203. So Savage's relevant time period under Title II runs from August 14, 2022, through December 31, 2026.

The time period relevant in a Title XVI claim for supplemental security income runs from the date on which the claimant filed his or her application. 20 C.F.R. §§ 416.330, 416.335; *see Bogle v. Sullivan*, 998 F.2d 342, 346 n.2 (6th Cir. 1993). Savage filed his Title XVI claim on November 25, 2022. Tr. 157–159. So the relevant time period for Savage's Title XVI claim runs from November 25, 2022, until April 3, 2024, the date on which the ALJ issued her decision. Tr. 14.

13

that the only medical record showing a resting ankle/brachial systolic blood pressure ratio less than .50 was dated August 2021 and asserting that Savage failed to show he met all requirements of Listing 4.12 during the relevant period); Doc. 11, at 1 (replying without support that "[t]he issue is not when the test occurred, but whether Plaintiff had the test results of Listing level severity"). Indeed, Savage's briefing seems to ignore the fact that the ALJ's finding was *not* contrary to the medical evidence.

Despite recognizing that he bears the burden to show that he met the listing requirements and admitting that "the ALJ discussed the evidence," Savage concludes that "the medical evidence, as set forth above, provided substantial evidence that [he] satisfied the criteria of the relevant Listing." Doc. 8, at 8–9. In essence, Savage's argument is that the ALJ's omission of any discussion surrounding the August 2021 record shows she "failed to properly consider the relevant evidence in light of the applicable Listing" and, thus, her decision couldn't be supported by substantial evidence. But the ALJ said she considered the entire record. *See e.g.*, Tr. 20. Absent evidence to the contrary, the Court will presume that this statement is true. *See NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 163 (2d Cir. 2021); *see also United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."); *cf. Higgs v. Bowen*, 880 F.2d 860, 864 (6th Cir. 1988) (noting that the

Appeals Council "state[d] that it 'considered the entire record which was before the administrative law judge, including the testimony at the hearing'"). It bears repeating that the August 2021 record is irrelevant to Savage's instant disability claim, because it was created approximately one year before Savage's disability onset date. So it is unclear why the ALJ would have needed to cite it.  Regardless, the ALJ's failure to cite a particular record does not mean that the ALJ failed to consider that record.[5]  *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."); *Byler v. Kijakazi*, No. 5:20-cv-1822, 2022 WL 980099, at *9 (N.D. Ohio Jan. 21, 2022) ("with a nearly one-thousand page record, the ALJ cannot be expected to discuss every piece of evidence that Plaintiff believes is inconsistent with the RFC"), *report and recommendation adopted*, 2022 WL 971384 (N.D. Ohio Mar. 31, 2022).

Savage's failure to show that the ALJ needed to explain her consideration of a record created approximately one year before the disability onset date matters because "so long as substantial evidence supports the conclusion reached by the ALJ," it doesn't matter if substantial evidence also supports his position. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). As to

---

[5]    To be sure, the ALJ was aware of the August 2021 finding. The ALJ noted Savage's hospitalization in August 2021 and explained that imaging from February through December 2023 "showed no evidence of occlusive arterial disease" and that "as it pertains to the right lower extremity in particular[,] … the record shows no recurrent, significant occlusive disease in the right lower extremity since stent placement on August 16, 2021[.]" Tr. 21–22 (citing Exhibits 9F6, 32, 67, 6F5).

the substantial evidence analysis, whether—as Savage says—"the medical evidence, as set forth above, provided substantial evidence that [he] satisfied the criteria of the relevant Listing," Doc. 8, at 8, is irrelevant unless he shows that substantial does not support the ALJ's decision, *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Savage has not made this showing. Instead he makes the conclusory assertion that the ALJ's decision lacked support. Savage has thus forfeited the argument that the ALJ's decision is unsupported by substantial evidence. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

In other words, Savage has not carried his burden to show that he met or medically equaled Listing 4.12. Nor did he show that the ALJ's assessment that he failed to meet Listing 4.12 is unsupported by substantial evidence. So Savage's first issue does not provide a basis for remand.

> ### 2. *The ALJ appropriately discussed how she considered the supportability and consistency of Drs. Rehman's and Sih's opinions.*

Next, Savage argues that the "ALJ failed to address the supportability and consistency of [Dr. Rehman's] opinion. Thus, the ALJ's rationale for discounting the opinion of the treating source was either supported by nor consistent with the evidence in this matter." Doc. 8, at 13. He also claims that

the "ALJ failed to address the supportability and consistency of [Dr. Sih's] opinion. Once again, the ALJ's analysis of a treating source opinion was neither supported by nor consistent with any evidence." *Id.*

As an initial matter, to the extent that Savage is attempting to argue that regulations require the ALJ discuss the supportability and consistency of *her own* opinions, he has misread the applicable regulation. *See* Doc. 8, at 13 (asserting that the "ALJ's analysis" was "neither supported by nor consistent with any evidence"); 20 C.F.R. § 416.920c(b)(2) (requiring an ALJ consider the supportability and consistency of medical opinion evidence). Instead, for purposes of this Court's review, the ALJ's conclusions need only be supported by substantial evidence. *Biestek*, 587 U.S. at 99. Additionally, to the extent that Savage is attempting to distinguish Drs. Rehman's and Sih's opinions as "treating source" opinions, that language invokes the former *treating physician* rule. Under 20 C.F.R. § 416.927(c)(2), known as the "treating physician rule," when considering an application filed *before* March 27, 2017, the ALJ must give a treating-source opinion controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 416.927(c)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). And ALJs applying the former rule must provide "good reasons" for the weight they give to treating physicians' opinions. 20 C.F.R. § 416.927(c)(2). But the treating-physician rule does not apply to applications,

17

such as Savage's application, that were filed after March 27, 2017, and the current regulations do not assign controlling weight to treating physicians' opinion.

Under the current regulations, the Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 416.920c(a), 416.920c(c)(1)–(5). Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(a). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] … the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. § 416.920c(c)(2). The Commissioner must explain the supportability and consistency factors when discussing a medical opinion. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ need not," however, "specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (citing cases). The Commissioner is not required to discuss the remaining factors. *Id.* "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the

18

persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

Here the ALJ appropriately considered the supportability and consistency of both Dr. Rehman's and Dr. Sih's opinions as required by the governing regulations. *See* Tr. 23–24.

As to her consideration of Dr. Rehman's opinion, the ALJ explained as follows:

> I find little persuasive effect in the opinion of Dr. Saif Rehman M.D., who stated the claimant could sit for one to five minutes at one time, can stand for one to five minutes at one time, can sit, stand, and walk for less than two hours total in a eight hour workday, requires periods of walking around to alleviate pain, requires a cane for walking, can rarely lift less than ten pounds, is incapable of even low stress work, and is not able to work (7F1-4). Dr. Rehman's opinion is not well supported by a reasoned narrative, and appears overly reliant on the claimant's subjective statements from treatment history. Dr. Rehman's opinion also is inconsistent with the repeatedly normal diagnostic studies since February 2023, showing no occlusive disease in either lower extremity (e.g., 6F5, 9F6). Dr. Rehman's opinion is also inconsistent with the record on its face because his indicated total time in a seated or standing position indicates the claimant is up and down every five minutes or so, and would have to spend a good majority of the day lying down. Clinical examinations and general indications from medical appointments indicate the claimant is able to sit and stand for longer periods than indicated by Dr. Rehman (e.g., 6F8, 9F444). There is no mention in the treatment record of the claimant presenting for appointments having to get in and out of his seat as

often as Dr. Rehman has indicated. For the above
reasons, I find little persuasive effect in this opinion.

Tr. 23–24.

Here, the face of the ALJ's decision belies Savage's argument because
the ALJ specifically stated that she considered both the supportability and
consistency of Dr. Rehman's opinion and the content of the ALJ's decision
confirms she did as she stated. *See* Tr. 23–24. Savage's statement that the ALJ
discounted Dr. Rehman's opinion as having "little persuasive effect as there
was no mention of [him] presenting for appointments and having to 'get in and
out of his seat as often' as Dr. Rehman indicated[,]" Doc. 8, at 12 (citing Tr. 23–
24), oversimplifies the ALJ's analysis. As to the supportability of Dr. Rehman's
opinion the ALJ explained that she found it "not well supported by a reasoned
narrative; and appears overly reliant on the claimant's subjective statements
from treatment history." Tr. 23. By explaining that she found that the
underlying objective evidence and explanations that Dr. Rehman provided in
the opinion "had little persuasive effect," *id*., the ALJ showed that she
considered the supportability factor. *See* 20 C.F.R. § 404.1520c(c)(1).

As to consistency, the ALJ explained that Dr. Rehman's opinion was
"inconsistent with the repeatedly normal diagnostic studies since February
2023[.]" *Id*. The ALJ also explained that she found that Dr. Rehman's opinion
that Savage needed to change positions every five minutes or so and spend a
majority of the day lying down, was inconsistent with "clinical examinations
and general indications from medical opinions indicat[ing] the claimant is able

20

to sit and stand for longer periods than indicated by Dr. Rehman." *Id*. And the ALJ highlighted that "[t]here is no mention in the treatment record of the claimant presenting for appointments having to get in and out of his seat as often as Dr. Rehman has indicated." *Id*. at 24. The ALJ's explanations all go to the consistency factor because she was explained that Dr. Rehman's opinion was less persuasive since it did not align with the other evidence of record. *See* 20 C.F.R. § 404.1520c(c)(2).

Next, the ALJ explained her consideration of Dr. Sih's opinion as follows:

> I also find little persuasive effect in the opinion of Dr. Marvin Sih M.D., who stated the claimant can sit for at least six hours during a workday, can stand and walk for ten to fifteen minutes for less than two hours total during a workday, requires periods of walking around every five minutes for five to ten minutes, will experience two to three unscheduled breaks each workday, will be off task ten to fifteen percent of any given workday, is capable of low stress work, and will be absent three to four days of work per month (8F1-4). Dr. Sih has not provided any specific support for his conclusion the claimant will be absent from work three to four days per month, or concerning the opined need for unscheduled breaks. His statements concerning a need for the claimant to alternate sitting and standing every five minutes is inconsistent with the record for the same reasons as discussed above, with Dr. Rehman's opinion. Clinical examinations have not shown the claimant changing positions with such frequency. Such have not shown significant edema in the lower extremities since stents were placed in each, respectively (e.g., 9F444). Dr. Sih's opinion also does not distinguish or specifically address the multiple ultrasound studies since February 2023 showing no occlusive arterial disease in either lower extremity (e.g., 9F6). Given these inconsistencies and the lack of support for some of

21

>
> the stated restrictions, I find little persuasive effect
> in Dr. Sih's opinion.

Tr. 24.

Again, the face of the ALJ's decision contradicts Savage's argument that "[t]he ALJ failed to address the supportability and consistency of this opinion." *See* Doc. 8, at 13. As to the supportability of Dr. Sih's opinion, the ALJ noted that Dr. Sih did not provide "any specific support for his conclusion that [Savage] will be absent from work three to four days per month, or concerning the opined need for unscheduled breaks." Tr. 24. This statement shows that the ALJ considered how Dr. Sih supported his own conclusions with citation or explanations in the opinion. *See* 20 C.F.R. § 404.1520c(c)(1). Likewise, the ALJ showed that she considered how consistent Dr. Sih's opinion compared to the rest of the record evidence when she explained that "[c]linical examinations have not shown the claimant changing positions with [the opined] frequency" and that his opinion "does not distinguish or specifically address the multiple ultrasound studies since February 2023 showing no occlusive arterial disease in either lower extremity[.]" *Id.*, *see also* 20 C.F.R. § 404.1520c(c)(2).

Simply put, the ALJ properly considered the supportability and consistency of both opinions under the applicable regulations. Savage's protestations to the contrary only illustrate that his position amounts to nothing more than a dispute over the ALJ's weighing of the evidence. *See* Doc. 8, at 13 (claiming that the medical evidence does not support the ALJ's conclusions). But this Court does not reweigh the evidence; weighing the

evidence is solely the ALJ's duty. *See* 20 C.F.R. § 404.1520c(a) (explaining how the ALJ will consider and weigh medical opinions and prior administrative medical findings); *see also Rottman v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 196 (6th Cir. 2020 ("[T]his court does not weigh evidence, assess credibility, or resolve conflicts in testimony—that's the ALJ's job.") (citation omitted)).

As a final point, Savage's final paragraph of this section appears to invoke two arguments not properly presented in the heading to this argument. *See id*. at 13–14 (arguing that the ALJ failed to provide a "coherent explanation" of how she considered the record and failed to "incorporated the stated limitations into the RFC"). Savage's argument that the ALJ failed to comply with two district court decisions is not persuasive and is presented in a conclusory manner—unaccompanied by any explanation of how the ALJ failed act in accord with the decisions cited. So the argument is forfeited *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (internal citations omitted). Additionally, Savage's passing argument that the ALJ failed to include certain limitations in her RFC determination is entirely distinct from his second issue that alleges failure to comply with regulations governing the consideration of medical opinion evidence. *See* Doc. 8, at 13–14. So that argument contravenes this Court's

order. *See* Doc. 4, at 4. Both of these arguments are thus improperly presented and forfeited.

To review, the ALJ appropriately considered the opinion evidence. So neither Savage's second issue presented, nor the other attendant arguments in this section, provide a basis to remand.

### 3.   The ALJ complied with Social Security Ruling 16-3p.

In his third issue, Savage alleges that when the ALJ discounted his subjective symptom complaints, she failed to comply with Social Security Ruling 16-3p. *See* Doc. 8, at 16.

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ considers medical evidence, the claimant's statements, other information provided by medical sources, and any other relevant evidence in the record. *See* Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017); 20 C.F.R. § 404.1529. Other relevant evidence includes: daily activities; the location, duration, frequency, and intensity of pain or symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication, to relieve pain; any measures used to relieve pain; and "[o]ther factors concerning … functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c). "The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence." *Hatcher v. Berryhill*, No. 1:18-cv-1123, 2019 WL 1382288, at *15 (N.D. Ohio Mar. 27,

2019) (citing *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005)).

The sole argument indicated in the heading for Savage's third issue is that the ALJ failed to comply with SSR 16-3p when evaluating the totality of his symptoms. *See* Doc. 8, at 14. To this end, Savage states "the ALJ is to consider a person's daily activities, the location and duration and frequency and intensity of pain, the effects of medication, treatment received, and measures other than treatment used for pain, and other factors concerning a person's functional limitations." *Id*. At no point, however, does Savage point to a particular factor or factors that the ALJ allegedly did not consider. *See id* at 14–18. Instead, Savage makes three conclusory assertions in support of his third issue: (1) the ALJ failed to articulate any supportable rationale for her finding that his subjective complaints were inconsistent with the medical evidence; (2) the ALJ's decision was "not sufficiently specific to make clear to the individual and to any subsequent reviews the weight the ALJ gave to [Savage] and/or the remainder of the evidence in this matter[;]" and, (3) the ALJ's conclusions were not supported by substantial evidence. Doc. 8, at 17. As an overarching problem, Savage fails to cite any evidence to support his conclusory assertions that the ALJ provided inadequate explanations or that her decision was unsupported by substantial evidence. *Id*. By simply making statements untethered to any record support, Savage has forfeited these arguments. *See McPherson*, 125 F.3d at 995.

25

But, even if Savage had attempted to substantiate his assertions with factual support or pointed to particular factors that he felt the ALJ failed to consider or discuss, the ALJ's decision would contradict that argument. *See* Tr. 21 (identifying Savage's difficulty with performing certain daily activities and testimony related to difficult grocery shopping and alleged need elevate his legs each day); Tr. 22 (summarizing Savage's various conditions and prescribed medications and treatment). Plus, to the extent that Savage is attempting to argue that the ALJ's failed to discuss certain factors listed in SSR 16-3p, that ruling does not impose a requirement that the ALJ discuss all factors listed in the Ruling. *See Hatcher*, 2019 WL 1382288, at *15.

As a final observation, Savage's failure to provide specific examples from the ALJ's decision to demonstrate the deficiencies alleged and the conclusory nature of his arguments indicate that Savage's third issue ultimately challenges the ALJ's weighing of the evidence. In other words, Savage essentially asks the Court to reweigh the evidence. This conclusion is partly supported by the fact that Savage cites a great deal of factual evidence, some of which is presented for the first time in this portion of his argument. *See* Doc. 8, at 14–16. This newly cited evidence is thus presented in breach of the Court's initial order and cannot provide support for Savage's third issue. *See* Doc. 4, at 3–4. Further, Savage makes the following overarching statement summarizing his third issue: "the totality of the evidence documenting [his] disabling symptoms were ignored and/or disregarded by the ALJ, there was insufficient

26

analysis, and [the] ALJ did not comply with the requirements of SSR 16-3p."
Doc. 8, at 17–18. This statement makes clear that the apparent objective of his
third issue is for this Court to reweigh certain evidence and reach a conclusion
that aligns with Savage's desired outcome. But that is not the role of this Court.
As noted, the ALJ is responsible for weighing the evidence. *See* 20 C.F.R. §
404.1520c(a). And simply pointing to evidence that Savage believe shows his
subjective symptom complaints should have been found more persuasive
neither shows that the ALJ erred in evaluating the evidence, nor that the ALJ's
decision is unsupported by substantial evidence. *See, e.g., Key*, 109 F.3d at 273
("The decision of an ALJ is not subject to reversal, even if there is substantial
evidence in the record that would have supported an opposite conclusion, so
long as substantial evidence supports the conclusion reached by the ALJ.").

For all of the reasons stated, Savage's third issue does not support
remand.

### 4. The ALJ's RFC determination providing a limitation for Savage to use a cane for ambulation was supported by substantial evidence.

As his fourth and final issue section, Savage argues that the ALJ erred
by including a cane limitation only for walking rather than for both standing
and walking. Doc. 8, at 18–19. Savage points to the opinions of Drs. Rehman
and Sih to support this argument. *Id*. at 19. As is discussed, while Drs. Rehman
and Sih arguably indicated that Savage required the use of a cane when

standing and walking, Tr. 620, 624, neither of these unpersuasive opinions nor Savage's arguments provide a basis to remand.

If an assistive device is "not a necessary device for [a] claimant's use, it cannot be considered an exertional limitation that reduce[s] [the claimant's] ability to work." *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). To be considered a restriction or limitation, an assistive device "must be so necessary that it would trigger an obligation on the part of the Agency to conclude that the [device] is medically necessary." *Murphy v. Astrue*, No. 2:11-cv-114, 2013 WL 829316, at *10 (M.D. Tenn. March 6, 2013) (citations omitted). To be *medically necessary*, the record must reflect "more than just a subjective desire on the part of the plaintiff as to the use of a[n] [assistive device]." *Id.* (citation omitted). And there must be medical documentation "describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." Soc. Sec. Ruling 96-9p, 1996 WL 374185, *7 (S.S.A. July 2, 1996); *see Golden v. Berryhill*, No. 1:18-cv-636, 2018 WL 7079506, at *19 (N.D. Ohio Dec. 12, 2018) ("a cane prescription [that] does not indicate 'the circumstances for which [the cane] is needed,' … does not fulfil the requirements under SSR 96-9p"), *report and recommendation adopted sub nom. Golden v. Comm'r of Soc. Sec.*, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019).

"If the ALJ does not find that such device would be medically necessary, then the ALJ is not required to pose a hypothetical to the V[ocational] E[xpert]"

which includes the use of an assistive device. *Murphy*, 2013 WL 829316, at *10 (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). Generally, an ALJ's finding that an assistive device is not *medically necessary* is error when the claimant was prescribed an assistive device and the ALJ didn't include the use of the device in the RFC without providing an explanation for omitting it. *Cruz-Ridol v. Comm'r of Soc. Sec.*, No. 1:17-cv-1075, 2018 WL 1136119, at *15 (N.D. Ohio Feb. 12, 2018) (citing *Watkins v. Comm'r of Soc. Sec.*, No. 1:16-cv-2643, 2017 WL 6419350, at *11 (N.D. Ohio Nov. 22, 2017)), *report and recommendation adopted*, 2018 WL 1083252 (N.D. Ohio Feb. 28, 2018).

In support of his argument that his RFC should have included a limitation for cane use for both ambulation and standing, Savage points to the following evidence: (1) his testimony; (2) "observations and opinions of the treating sources" Dr. Rehman and Dr. Sih, who he claims "indicated that [he] required the use of a cane for both standing and walking; and (3) the vocational expert's testimony. *See* Doc. 8, at 19.

To find that a "hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing*, and describing the circumstances for which it is needed*." SSR 96-9p, 1996 WL 374185, at *7. To show that an assistive device must have been required, *a claimant* "must also show that his medical records *specifically document the circumstances in which he required*

29

*an assistive device*—i.e., whether he required one at all times, during all activities, and on all terrains." *Barnes v. Comm'r of Soc. Sec.*, No. 5:21-CV-01688-JDA, 2023 WL 2988346, at *8 (N.D. Ohio Mar. 22, 2023) (emphasis added); *see* SSR 96-9p, 1996 WL 374185, at *7.

Here, although Savage points to the opinions from Drs. Rehman and Sih, he does not point to any evidence from those providers or any other medical source that "specifically document[s] the circumstances in which he required an assistive device" such that Ruling 96-9p required the ALJ to discuss the use of a hand-held device. *See Barnes*, 2023 WL 2988649, at * 8.

Indeed, neither of the cited opinions described the circumstances in which he required a can. For example, Dr. Rehman checked a box indicating "Yes" that Savage needed a cane. Tr. 620. Then, in response to the questions "Does your patient need a cane or other hand-held assistive device for walking, standing or both?" and "Does your patient need a cane or other hand-held assistive device all of the time?" Dr. Rehman simply wrote "Yes"—without further narrative explanation. *Id*. Similarly, Dr. Sih indicated that "Yes" Savage needed a cane. Tr. 624. In response to the same two questions, Dr. Sih indicated, without further explanation, that Savage needed a cane for "Both" walking and standing but that "No" he does not need a cane all of the time. *Id*. These two opinions do not "show that his medical records *specifically document the circumstances in which he required an assistive device*—i.e., whether he required one at all times, during all activities, and on all terrains." 2023 WL

30

2988649, at *8 (emphasis added). Additionally, these opinions reached different conclusions as to whether Savage needed a cane at all times. *Compare* Tr. 620 (Dr. Rehman stating that "Yes" he needed a cane at all times), *with* Tr. 624 (Dr. Sih stating that "No" he did not need a cane at all times). Savage makes no attempt to reconcile this inconsistency and instead relies on these two opinions as if they are one in the same. *See* Doc. 8, at 18. Savage also does not point to any evidence that he had a prescription for a cane. The fact that Savage references his own testimony or the vocational expert's testimony also does not show that a cane was medically necessary. *See Parrish v. Berryhill*, No. 16-cv-1880, 2017 WL 2728394, at *12 (N.D. Ohio June 8, 2017) ("While there are some indications in the medical records that Plaintiff was using a cane, this is insufficient to establish that the cane was medically required"), *report and recommendation adopted*, 2017 WL 2720332 (N.D. Ohio June 23, 2017).

Perhaps an even greater flaw in Savage's final argument is that the ALJ explicitly found that Drs. Rehman's and Sih's opinions, the only opinion evidence that Savage cites to support his need for a cane, were unpersuasive. Tr. 23–24. As explained above, the ALJ's rational for finding Drs. Rehman's and Sih's opinions unpersuasive complied with applicable regulations. Savage does not address how the ALJ's finding that Drs. Rehman and Sih's opinions were unpersuasive affects the ALJ's evaluation of whether Savage required a cane. Nor does he point to anything that would support an argument that the

ALJ erred by omitting a limitation only supported by an opinion that she found unpersuasive.

So Savage's fourth issue does not provide a basis for remand.

**Conclusion**

For the reasons explained above, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated: December 4, 2025          /s/ James E. Grimes Jr.
                                 James E. Grimes Jr.
                                 U.S. Magistrate Judge